O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RICHIE HICKS,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | Case No. EDCV 07-0180-MLG<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Richie Hicks seeks judicial review of the Commissioner's denial of his application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits under the Social Security Act. For the reasons stated below, the decision of the Commissioner is **AFFIRMED**.

**I. Facts and Procedural History**

Plaintiff was born on December 17, 1970, (Administrative Record ("AR") 45), and he has a twelfth grade education (AR 14). Plaintiff's work history includes employment as a truck driver and auto detailer.

(AR 14.) Plaintiff was not gainfully employed between June 1, 2001, and June 2006, when Plaintiff returned to full time work as a forklift operator. (AR 312.) Plaintiff claims he became disabled in early 2001 after sustaining back and shoulder injuries when a pallet came crashing down on him while he was unloading freight at work. Plaintiff's injuries included a torn rotator cuff and required bilateral shoulder surgery. (AR 217.) Plaintiff asserts that he was unable to work between 2001 and 2006 due to this injury, and that the loss of income and productivity resulted in low self-esteem and depression, for which he self-medicated with alcohol. (AR 217.)

Plaintiff filed an application for SSDI and SSI benefits on August 7, 2002. (Joint Stipulation ("Joint Stip.") 2.) The Commissioner denied Plaintiff's application on February 11, 2003, (AR 23-25), and again on July 16, 2003, upon reconsideration. (AR 30-33.) After Plaintiff's timely request, Administrative Law Judge ("ALJ") F. Keith Varni held a hearing on July 22, 2004, at which Plaintiff was represented by counsel. (Joint Stip. 2.) No vocational expert testified at the hearing.

The ALJ denied Plaintiff's application on August 10, 2004, concluding that Plaintiff was not disabled under the Social Security Act. (AR 14.) The ALJ applied the five-step sequential analysis mandated by the Social Security Regulations[1] in reaching his decision. The ALJ found that Plaintiff's "bilateral rotator cuff tears, status post bilateral rotator cuff repair, and chronic alcohol abuse with probable

---

[1] The five steps are as follows: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

alcohol dependence and depressive disorder, not otherwise specified, are in combination considered 'severe' based on the requirements in the Regulations at 20 CFR § 404.1521." (AR 18). However, the ALJ concluded that absent Plaintiff's alcohol abuse, which may not contribute to a disability finding, his mental impairment alone was "nonsevere" as defined by the regulations. (AR 16).

After determining that Plaintiff's impairments did not meet or equal any listed impairment, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift or carry twenty pounds occasionally and ten pounds frequently, stand, walk, or sit frequently with customary breaks, and reach more than frequently, but not overhead to any significant extent. (AR 18.) In reaching this conclusion, the ALJ rejected the treating physicians' opinions as "inconsistent and accommodative." (AR 17.) The ALJ further found that Plaintiff could return to his past relevant work and was not disabled as defined by the Social Security Act at any time through the date of the decision. (AR 18-19).

The Appeals Council denied Plaintiff's request for review on February 10, 2005, and Plaintiff filed an action for judicial review in this Court on February 14, 2005. *Hicks v. Barnhart*, No. EDCV 05-00292-MLG (2005). On February 23, 2006, this Court determined that the ALJ had erred by finding Plaintiff's mental impairment to be nonsevere at step two and remanded the case for further proceedings. (Dkt. No. 16.)

Plaintiff appeared at a second hearing before the same ALJ on November 17, 2006. (AR 310.) A vocational expert testified at this hearing, and Plaintiff was again represented by counsel. Plaintiff testified that he had resumed full-time work as a forklift driver in June 2006, and he denied having received any treatment for either his

mental or physical impairments since approximately 2005. (AR 312.) Plaintiff testified that he no longer took any psychotropic medication, and that he took pain medication only as needed. (*Id.*) Plaintiff also denied having had any alcohol for two years. (*Id.*)

On December 8, 2006, the ALJ again denied Plaintiff's application for benefits. In his decision, the ALJ incorporated his analysis and conclusions from the prior decision, except as modified and supplemented by the more recent decision. (AR 311.) The ALJ determined that Plaintiff's "residuals of bilateral rotator cuff tear repairs and history of depression and alcohol abuse in remission" were "severe." (AR 312.) The ALJ noted that Plaintiff had refused to attend consultative orthopedic and psychiatric evaluations the ALJ had requested before the hearing. (*Id.*) The ALJ determined that Plaintiff had the RFC to lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently, to stand, walk, or sit frequently with customary breaks, to climb, stoop, kneel, crouch, or crawl frequently, though Plaintiff could do no significant overhead reaching. (AR 313.) With respect to Plaintiff's mental impairment, the ALJ concluded that Plaintiff "never lost the capacity to perform routine and repetitive, entry-level, minimally stressful work requiring no significant contact with the general public and only superficial interpersonal interaction with coworkers and supervisors." (AR 313-14.) The ALJ found that these limitations precluded Plaintiff from returning to his past relevant work, but that jobs existed in significant numbers in the national economy that Plaintiff could perform. The ALJ deemed Plaintiff to be "not disabled" under the Social Security Act. (AR 315.)

Plaintiff filed this action on February 21, 2007. (Complaint 1.) Plaintiff alleges that the ALJ erred in three particulars: (1) that the

ALJ improperly rejected a treating physician's opinion in reaching his disability determination; (2) that the ALJ failed to develop the record; and (3) that the ALJ posed an improper hypothetical to the vocational expert who testified at the second hearing. (Joint Stip. 3.) Plaintiff asks this Court to order an award of benefits, or, in the alternative, to remand for a new administrative hearing. (Joint Stip. 13-14.)

**II.   Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld if it is "supported by 'substantial evidence' and if the proper legal standard was applied." *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

//
//
//

**III. Discussion**

Although Plaintiff assigns three different types of error to the ALJ's decision, each alleged error derives from a single issue: whether the ALJ properly analyzed and rejected the opinion of Plaintiff's treating physician, Dr. Brown, in reaching his decision. Plaintiff first argues that the ALJ provided insufficient reasons for rejecting Dr. Brown's opinion of Plaintiff's limitations. Plaintiff next argues that because Dr. Brown's opinion regarding those limitations was "vague and ambiguous," the ALJ should have contacted Dr. Brown for clarification. (Joint Stip. 9-10.) Finally, Plaintiff argues that the ALJ erred by failing to incorporate Dr. Brown's opinion of Plaintiff's limitations into the hypothetical posed to the vocational expert. Plaintiff identifies no other error. Although these alleged errors are necessarily interrelated, the Court will address each issue in turn.

**A. The Physicians' Opinions**

Plaintiff's treating physician, orthopedic surgeon Markus Brown, M.D., completed a questionnaire on March 13, 2003, outlining his opinion regarding Plaintiff's work limitations. (AR 288-90.) As the ALJ noted, Dr. Brown's assessment was internally inconsistent. On the questionnaire's first page, Dr. Brown indicated that Plaintiff was not limited in his ability to stand and walk, with normal breaks, during an eight-hour day. (AR 288.) On the second page, however, Dr. Brown suggested that Plaintiff could only stand for thirty minutes before needing to change position and that he needed to take fifteen-minute walks every thirty minutes. (AR 289.) Dr. Brown also indicated that Plaintiff could sit no longer than two hours during an eight-hour day with normal breaks, and that Plaintiff needed to change position after sitting for five minutes. (AR 288-89.) Dr. Brown further opined that

Plaintiff would need to lie down at unpredictable intervals, up to three to four times during a work shift. (AR 289.) Finally, Dr. Brown indicated that Plaintiff would be able to lift and carry twenty pounds occasionally and less than ten pounds frequently, that he was limited in reaching, handling, and pushing or pulling, and that he should avoid exposure to extreme cold. (AR 288-90.) When prompted to identify the medical findings to support these limitations, Dr. Brown indicated that Plaintiff's shoulder injuries formed the basis for the limitations. (*Id.*)

In reaching his conclusion that Plaintiff was not disabled, the ALJ rejected Dr. Brown's recommendations and instead relied on several other physicians' opinions. The ALJ noted that in March 2001, Rodney A. Gabriel, M.D., found that Plaintiff could return to "modified duties," with no repetitive lifting, pushing or pulling over twenty pounds. (AR 17, 128.) A consulting physician, Bunsri T. Sophon, M.D., reported on November 18, 2002, that Plaintiff was able to lift and carry thirty pounds occasionally and ten pounds frequently, that Plaintiff was limited to occasional pushing and pulling of twenty pounds and occasional reaching, with no over-the-shoulder work. (AR 159.) Dr. Sophon further opined that Plaintiff had no limitation in sitting, standing, or walking. (*Id.*) Reviewing physician S.C. Swan, M.D., stated on December 13, 2002, that Plaintiff was able to lift twenty pounds occasionally and ten pounds frequently, that he was not limited in sitting, standing, pushing, or pulling, but that he should avoid "above shoulder level activities." (AR 186-88.) Another reviewing physician, James A. Haaland, M.D., concurred in Dr. Swan's RFC assessment on May 1,

2003.[2]

**B. The ALJ Properly Rejected the Treating Physician's Opinion Regarding Plaintiff's Disability**

Plaintiff assigns error to the ALJ's rejection of Dr. Brown's opinion, arguing that the ALJ failed to provide specific and legitimate reasons for rejecting the treating physician's opinion. (Joint Stip. 5.) Plaintiff is correct that the ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources, see 20 C.F.R. § 404.1527(d)(2), and that the ALJ must give specific and legitimate reasons for rejecting a treating source's opinion that is contradicted by another physician, *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Nevertheless, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ rejected Dr. Brown's opinion of Plaintiff's limitations in the first decision. (AR 17.) In explaining his rejection of Dr. Brown's opinion, the ALJ stated, "[T]he orthopedic assessment provides no explanation for why the claimant could be on his feet constantly, but less than occasionally in terms of sitting due to shoulder problems, which leads me to believe the form was completed in a very cursory and accommodative manner for this social security claim." (*Id.*) The ALJ also noted that Dr. Brown's written evaluations of Plaintiff's physical

---

[2] Plaintiff was seen by several psychiatrists during the period of claimed disability, including a consulting psychiatrist on whom the ALJ relied in reaching his decision. However, because Plaintiff does not challenge the ALJ's findings with respect to the mental limitations, the psychiatrists' opinions are not relevant to this decision.

8

impairments focused on the workers' compensation framework, which considers only whether a claimant is able to return to his or her customary work, not whether the claimant is precluded from working in any capacity. (*Id.*) The ALJ stated, "Given the treating source's focus [on] the worker's compensation claim and the inconsistent and accommodative nature of their assessments, I must give greater weight to the findings of the noted consultative medical examiners." (*Id.*) The ALJ also pointed out that Dr. Brown's assessment of Plaintiff's impairments remained unchanged, yet Plaintiff returned to working full time as a forklift operator, which the vocational expert classified as medium, semiskilled work. (AR 314, 351.) The ALJ stated, "Since the claimant settled his worker's compensation claim in 2005 with no further treatment and returned to rather strenuous work which he performed for five months by the time of the hearing with no indication of any aggravation of his shoulder problems I can reasonably conclude that he never lost the capacity for light work as found herein above for any period of twelve or more months." (AR 314.)

     The Court finds that the ALJ gave specific and legitimate reasons for rejecting Dr. Brown's opinion, namely that the recommended limitations were contradictory and appeared to be unrelated to Plaintiff's actual injuries. For example, Dr. Brown indicated that Plaintiff could only sit for five minutes at a time, but that he had no limitations on his ability to stand and walk during an eight-hour workday. (AR 288.) The ALJ expressed doubt that Plaintiff's shoulder injuries would truly prevent him from sitting for any period of time, and the inherent contradiction between these two recommendations suggested to him that Dr. Brown's opinion was not entitled to significant weight. (AR 17.) That no objective medical evidence supports

Dr. Brown's recommendation and no other physician who evaluated Plaintiff indicated any similar limitation provides further support for the ALJ's decision. Furthermore, in a report written only 3 1/2 months before Dr. Brown recommended these limitations, Plaintiff's treating psychologist, Dr. De Silva, specifically stated that Plaintiff had no limitations on sitting or standing: "Throughout the interview [Plaintiff] was somewhat impatient and restless, however, he had no difficulty with sitting or standing for long periods of time." (AR 175.) Finally, the fact that Plaintiff was able to return to full time, medium-exertional level work in 2006, when the medical records reveal no positive change in his physical ailments and Dr. Brown's opinion remained the same throughout further supports the ALJ's decision to reject Dr. Brown's recommended limitations.

The ALJ was correct in finding that Dr. Brown's opinion as to Plaintiff's limitations is not supported by the objective medical evidence in the record and is contradicted by the opinions of all other physicians who evaluated Plaintiff, including Plaintiff's treating psychiatrist. The ALJ offered specific and legitimate reasons for rejecting Dr. Brown's assessment, which are supported by substantial evidence in the record. No relief is warranted on this issue.[3]

**C. The ALJ Adequately Developed the Record**

Plaintiff asserts that Dr. Brown's opinion that Plaintiff could only sit for five-minute intervals but had no restrictions on standing

---

[3] In the Joint Stipulation, Plaintiff quoted *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), as stating, "[U]nwarranted speculation that doctors misrepresented claimant's condition for [the] purpose of collecting disability benefits is not a sufficient basis for rejecting claimant's physician's opinion; evidence of actual improprieties is required." (Joint Stip. 4.) The Court was unable to locate this quote in the opinion, nor did the court in that case go so far as the quote would suggest.

or walking is "vague and certainly ambiguous." (Joint Stip. 10.) Plaintiff contends that the ALJ should have contacted Dr. Brown to clarify the ambiguity, and that the ALJ's failure to do so constitutes a violation of his duty to develop the record. (Joint Stip. 9.)

Where the medical records include ambiguous evidence, or inconclusive or otherwise inadequate information, the ALJ has a duty to seek clarification or additional evidence from medical sources. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Under such circumstances, the ALJ may develop the record in several ways, such as "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. Another option is for the ALJ to order a consultative examination to supplement the record.[4] *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001).

Here, the ALJ did not determine that Dr. Brown's records were inadequate for him to make a finding as to Plaintiff's impairments, which would trigger his duty to develop the record. Instead, the ALJ rejected Dr. Brown's opinion, and, as discussed above, he gave specific and legitimate reasons supported by substantial evidence in the record for doing so. The ALJ's identification of the deficiencies in a physician's opinion does not render the opinion ambiguous or inadequate. *Thomas v. Barnhart*, 278 F.3d 946, 958 (9th Cir. 2002)("[T]he requirement

---

[4] It appears from the record that the ALJ did request further consultative exams of Plaintiff prior to the second hearing, which Plaintiff declined to attend. (AR 312, 324-26.) Having refused to provide the ALJ with the additional medical information he requested, the Court finds it quite interesting that Plaintiff now claims the medical record was insufficient to make a disability finding.

11

for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability.").

In making his RFC determination, the ALJ rejected Dr. Brown's opinion and relied instead on the consulting and reviewing physicians' opinions, which were based upon independent clinical findings. Accordingly, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence in the record, and the ALJ was not required to clarify Dr. Brown's questionable assessment of Plaintiff's impairments.

Substantial evidence supports the ALJ's decision that the records were adequate to make a disability determination. The ALJ concluded from Plaintiff's existing records that his impairments were not sufficiently debilitating to preclude working. The Court affirms this conclusion.

**D. The ALJ Posed a Proper Hypothetical to the Vocational Expert**

Plaintiff contends that the ALJ's hypothetical to the vocational expert improperly omitted the significant limitations Dr. Brown recommended, such as the limitation on Plaintiff's ability to sit for any length of time. (Joint Stip. 12.) The ALJ posed the following hypothetical to the vocational expert at the hearing:

> I would like you to consider a person of the Claimant's vocational background, his age, education, and work experience. Consider an ability to lift 20 pounds occasionally; ten, frequent; sit, stand, walk up to six hours, each, in the normal eight-hour workday. There should be no overhead work. The work should be routine and repetitive, entry level, minimally stressful, should require no contact with the general public, and should require only a superficial degree of interpersonal contact with coworkers and

supervisors. (AR 350-51.) The ALJ adopted the limitations included in this hypothetical from the examining and reviewing physicians' and psychiatrists' reports as discussed above.

The vocational expert testified that although a claimant with these limitations could not return to past relevant work as a truck driver, significant numbers of other jobs exist in the national economy that the claimant would be able to learn and perform. (AR 350.) The ALJ relied on the vocational expert's testimony in concluding that Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and he therefore has not been "disabled" at any time. (AR 315.)

A hypothetical posed to a vocational expert must contain all the limitations of a particular claimant. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)(citations omitted). If the hypothetical fails to reflect all of the claimant's limitations, the vocational expert's testimony cannot support a finding that the claimant could perform jobs in the national economy. *See id.* However, the ALJ need only include in the hypothetical those limitations that are supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Having properly rejected Dr. Brown's opinion of Plaintiff's limitations, the ALJ appropriately omitted those limitations. *See id.*

The Court concludes that the ALJ posed an appropriate hypothetical to the vocational expert, containing all of Plaintiff's limitations as recommended by the examining and reviewing physicians and adopted by the ALJ. The ALJ properly relied on the vocational expert's opinion, and the decision is supported by substantial evidence in the record.

**IV. Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.

DATED: March 11, 2008

        MARC L. GOLDMAN
Marc L. Goldman
United States Magistrate Judge